**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:14cv598-FDW**

| | |
|---|---|
| **CLEVELAND LEWIS WILLIAMS,** )<br>)<br>**Petitioner,** )<br>)<br>**vs.** )<br>)<br>**BONITA WITHERSPOON,** )<br>)<br>**Respondent.** )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court upon Cleveland Lewis Williams's pro se Petition

for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Also before the

Court are Respondent's Motion for Summary Judgment (Doc. No. 7) and Petitioner's Motion to

Alter or Amend Judgment pursuant to Rule 59(e) (Doc. No. 10), Motion for Discovery (Doc. No.

11), motions for extension of time to respond to Respondent's pleadings (Doc. Nos. 12, 13), and

Motion for Summary Judgment (Doc. No. 17).

**I.      BACKGROUND**

Petitioner is a prisoner of the State of North Carolina, who, on February 7, 2011 was

indicted by a Mecklenburg County, North Carolina grand jury for trafficking between 28 and

200 grams of cocaine by possession and for possession of cocaine with the intent to sell or

deliver.  State v. Williams, No. COA 12–596, 2012 WL 6590793 at *2 (N.C. Ct. App. December

18, 2012) (unpublished).  On May 31, 2011, the Mecklenburg County grand jury returned an

additional bill of indictment charging Petitioner with having attained the status of habitual felon.

Id.  He was tried before a jury during the September 12, 2011 criminal session of the

Mecklenburg County Superior Court. The North Carolina Court of Appeals summarized the

State's evidence at trial:

> On 25 January 2011, Detective Mark Watson of the Charlotte–Mecklenburg Police Department was assigned to conduct surveillance on a residence located at 6207 Cross Creek Drive. In order to conduct this surveillance, Detective Watson parked his unmarked car three houses away from the location in question while other officers secured a warrant authorizing a search of the premises. At the time of his arrival, Detective Watson saw that two cars were parked in front of the residence, with a white Ford being located on the same side of the street as the residence and a green BMW being located on the opposite side of the street.

> Detective Watson watched the residence for approximately one hour and fifteen minutes. During that time, Detective Watson observed a dark-clad, bald black male, whom he later identified as [Petitioner], emerge from the residence and approach the green BMW on three occasions. On the first occasion, the individual leaned into the car through the front door for several seconds and then returned to the residence. On the second and third occasions, Detective Watson observed the individual open the trunk, "fumbl[e] with something" in the back left corner, and shove his left hand into his pocket before returning to the residence. Detective Watson relayed this information to another officer who was in the process of obtaining the search warrant.

> Shortly thereafter, investigating officers arrived with and executed the search warrant on the residence. During that process, an officer discovered [Petitioner] on the bathroom floor while the toilet was flushing. In addition, investigating officers found [Petitioner]'s cousin, Cleveland Murphy, who had dreadlocks or corn rows and was "thicker set" than Defendant, and a child in the residence. After executing the search warrant, investigating officers requested Detective Watson to come into the residence for the purpose of identifying the black male he had observed entering the green BMW. After identifying [Petitioner] without hesitation as the man he had observed entering the BMW, Detective Watson took a statement from Ms. Gilliard, Mr. Murphy's girlfriend and the mother of the child found on the premises at the time of the search, who had arrived at the residence during or after the search.

> Although investigating officers seized $740.00 from [Petitioner]'s person, they did not find the keys to the BMW, which were later discovered in the living room. Nothing contained in the BMW provided any indication of the identity of the vehicle's owner. After the arrival of a K–9 unit, investigating officers discovered controlled substances in both the house and the trunk of the BMW near the point at which [Petitioner] had been seen "fumbling with something." More specifically, investigating officers found three bags containing 56.96 grams of cocaine in the BMW's trunk.

Williams, 2012 WL 6590793 at *1-2.  On September 14, 2011, the jury returned verdicts convicting Petitioner of both drug offenses.  Id. at *2.  Thereafter, Petitioner pled guilty to having attained habitual felon status.  Id.  Based upon the jury's verdicts and Petitioner's plea, the trial court sentenced Petitioner to two concurrent terms of 84 to 110 months imprisonment.  Id.

The North Carolina Court of Appeals found no error on direct review.  Id. at *8.  It does not appear from the record or the amended Petition and its attachments that Petitioner sought further review in the North Carolina Supreme Court.

On March 18, 2013, Petitioner filed a pro se motion for appropriate relief ("MAR") and motion for an evidentiary hearing in Mecklenburg County Superior Court.  (Pet'r's Ex. 15 41-101, Doc. No. 3-2.)[1]  The state court summarily denied the MAR on May 10, 2013, concluding that it did not "state any grounds for which the Court may grant relief pursuant to N.C.G.S. 15A-1415 or N.C.G.S. 15A-1419."  (Order Den. MAR, Pet'r's Ex. 16 102, Doc. No. 3-2.)  Petitioner subsequently filed several more pleadings in the Mecklenburg County Superior Court, all of which were denied, dismissed, or ignored.  (Mem. in Support of Resp't's Mot. for Sum. J. 2, Doc. No. 8.)

On September 24, 2013, Petitioner filed a pro se mandamus petition in the North Carolina Court of Appeals (Pet'r's Ex. 28 142-42, Doc. No. 3-2; 1-9, Doc. No. 3-3), which was denied on October 2, 2013 (Order Den. Mandamus, Pet'r's Ex. 30 19, Doc. No. 3-3).  Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals on January 30, 2014 (Pet'r's Ex. 31 20-29, Doc. No. 3-3), which was denied on February 18, 2014 (Order Den. Cert. Pet., Pet'r's Ex. 34 45-6, Doc. No. 3-3).  Petitioner filed a second certiorari petition in the North

---

[1] With the exception of citations to the Record on Appeal (Resp't's Ex. 1, Doc. No. 8-2), page numbers in citations to documents filed in this case are those generated by the district court's electronic filing system.  Because Petitioner filed the trial transcripts as exhibits to his pleadings, the page numbers in citations to the transcripts likewise are those generated by the district court's electronic filing system.

Carolina Court of Appeals (Pet'r's Exs. 35 & 36 48-137, Doc. No. 3-3) which was denied on

March 31, 2014 (Order Den. Cert. Pet., Pet'r's Ex. 38 143, Doc. No. 3-3).  He also filed a

certiorari petition in the North Carolina Supreme Court on May 20, 2014, which was dismissed

on August 19, 2014.  (Order Den. Cert. Pet., Pet'r's Ex. 40 146, Doc. No. 3-3.)

Petitioner filed the instant federal habeas petition, supporting memorandum, exhibits, and

a motion for evidentiary hearing in this Court on October 28, 2014.  (Doc. Nos. 1-4.)  After

conducting an initial review required by Rule 4 of the Rules Governing Section 2254 Cases in

the United States District Courts, the Court ordered Respondent to file a response to the Petition.

The Court also denied Petitioner's motion for an evidentiary hearing without prejudice.

Respondent filed a Response (Doc. No. 6) and a Motion for Summary Judgment (Doc.

No. 7) with supporting memorandum and exhibits (Doc. No. 8.)  Petitioner subsequently filed a

Motion to Alter or Amend Judgment pursuant to Rule 59(e), seeking reconsideration of the

Court's denial of an evidentiary hearing (Doc. No. 10), a Motion for Discovery (Doc. No. 11),

motions for extension of time to respond to Respondent's pleadings (Doc. Nos. 12, 13), and a

Motion for Summary Judgment (Doc. No. 17).

## II.     STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to

any material fact, and it appears that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).  Any

permissible inferences to be drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 587–88 (1986).  Where, however, the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

**B.  The Antiterrorism and Effective Death Penalty Act of 1996**

Review of Petitioner's claims that were adjudicated on their merits by the state courts is limited by the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 374-91 (2000).  This Court may grant habeas relief on claims of constitutional error adjudicated on their merits in state court only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]."  Williams, 529 U.S. at 405.  A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case."  Williams, 529 U.S. at 407.  A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Finally, where, as here, the state court has issued a summary denial of a prisoner's federal claims, it is presumed to be an adjudication on the merits for § 2254(d)(1) purposes.  See Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000) (en banc) (reaffirming that a summary state court decision on the merits of a federal constitutional claim is an "adjudication" of the claim for purposes of § 2254(d)).  Additionally, when the state court does not provide reasons for its dismissal of a petitioner's claim, the federal habeas court considers "'what arguments or theories ... could have supported[ ] the state court's decision.'"  Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) (quoting Richter, 562 U.S. at 102).

**III    DISCUSSION**

### A.  Motions for Evidentiary Hearing & Discovery

Petitioner has filed a Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) (Doc. No. 10), which the Court shall construe as a motion for evidentiary hearing, and a Motion for Discovery (Doc. No. 11).  Petitioner seeks discovery of evidence he believes will support his claims that counsel were ineffective in the context of a plea offer by the State.  He seeks an evidentiary hearing on the same.

In Cullen v. Pinholster, the Supreme Court held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  131 S.Ct. 1388, 1400 (2011).  In other words, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on  the merits."  Id. at 1398.  "Accordingly, district courts are precluded

from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." <u>Ballinger v. Prelesnik</u>, 709 F.3d 558, 561 (6th Cir. 2013) <u>cert. denied</u>, 133 S.Ct. 2866 (2013) (citing <u>Pinholster</u>, 131 S.Ct. at 1400).

As explained in the previous section of this Order, the Mecklenburg County Superior Court adjudicated the claims raised herein on the merits. <u>See</u> Section II B, <u>supra</u>, at 6. Thus, this Court may not hold an evidentiary hearing on Petitioner's claims of ineffective assistance of counsel. <u>See</u> <u>Ballinger</u>, 709 F.3d at 561. Moreover, because habeas review is limited to the record that was before the state court that adjudicated Petitioner's claims on the merits, granting discovery so that Petitioner may supplement that record would be futile. <u>See</u> Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts , 28 U.S.C. folio § 2254 (requiring a petitioner to demonstrate "good cause" for discovery). Petitioner's motions, therefore, shall be denied.

### B. Attorney Affidavits

<u>Pinholster</u> also applies to several exhibits filed by Petitioner and Respondent. Those exhibits are: 1) an affidavit signed by Petitioner's third trial counsel, Dianne Jones McVay, on March 31, 2014 (Pet'r's Ex. 39 144-45, Doc. No. 3-3); 2) a notarized letter from Petitioner's first trial counsel, Butch Frazier, to Respondent's counsel, dated November 3, 2014 (Resp't's Ex. 4, Doc. No. 8-5); 3) an affidavit of Petitioner's second trial counsel, Charles Oldham, signed on November 4, 2014 (Resp't's Ex. 5, Doc. No. 8-6); and 4) an affidavit signed by McVay on November 10, 2014 (Resp't's Ex. 6, Doc. No. 8-7).

The Mecklenburg County Superior Court denied Petitioner's MAR on May 10, 2013; thus, none of the aforementioned exhibits were part of the record when that court considered

Petitioner's claims on the merits.[2]  Therefore, this Court is precluded from considering them on federal habeas review.  See Pinholster, 131 S. Ct. at 1398.

## C.  Ineffective Assistance of Trial Counsel in Connection with Plea Offer

Petitioner claims that trial counsel rendered ineffective assistance during plea negotiations and that but for that ineffective assistance, he would have accepted the State's plea offer.  Petitioner raised this claim in his March 18, 2013 MAR, and it was denied on the merits.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  Kimmelman v. Morrison, 477 U.S. 365, 3745 (1986).  In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim.  466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, "the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.

---

[2] The fact that Petitioner may have filed the March 31, 2014 McVay affidavit (Pet'r's Ex. 39 144-45, Doc. No. 3-3) with his certiorari petition in the North Carolina Supreme Court was not sufficient to present the affidavit for adjudication in the state courts.  A certiorari petition in the North Carolina appellate courts seeks discretionary review of a lower court's decision, and its denial is not an adjudication of the merits of the claims raised therein but merely a discretionary refusal to hear the case.  Felton v. Barnett, 912 F.2d 92, 94-95 (4th Cir. 1990).  Furthermore, the North Carolina Supreme Court lacked authority to review the certiorari petition.  Under state law and procedure, the North Carolina Court of Appeals has the final say, in most cases, over whether a certiorari petition (or any other type of review) will be allowed from the denial of a post-conviction MAR in a non-capital case.  See N.C.G.S. § 7A-28(a) (2013) ("Decisions of the Court of Appeals upon review of motions for appropriate relief listed in G.S. 15A-1415(b) are final and not subject to further review in the Supreme Court by appeal, motion, certification, writ or otherwise."); see also, N.C. R. App. P. 21(e) (2014) ("Court of Appeals has final say on whether certiorari will be granted from trial court's denial of MAR in cases in which death sentence has not been imposed.").

When assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough to show "that the errors had some conceivable effect on the outcome of the proceeding," id. at 693, or that "it is possible a reasonable doubt might have been established if counsel acted differently," Richter, 562 U.S at 111 Instead, "Strickland asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." Id. at 111–12.

The Supreme Court has held that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). "As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012). Additionally, it generally "is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement." Libretti v. United States, 516 U.S. 29, 50 (1995). To establish prejudice in the context of pleas "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). That is, a defendant must show that "but for the ineffective advice of counsel there is a reasonable probability that": (1) "the defendant would have accepted the plea and the prosecution would not

have withdrawn it in light of intervening circumstances"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 1385.

The record shows that on May 12, 2011, the State communicated a plea offer to Petitioner's attorney, Butch Frazier, whereby Petitioner would plead guilty to the lesser offense of attempted trafficking of cocaine; the State would dismiss the possession with intent to sell or distribute cocaine charge and would not seek habitual felon status, and Petitioner would agree to be sentenced at a Prior Record Level ("PRL") III to 17- 21 months imprisonment. (Plea Offer, Pet'r's Ex. 5 17, Doc. No. 3.) The plea also notified counsel that Petitioner had up to and including his first arraignment to accept the plea or it would be withdrawn, and the State would schedule all charges for trial. (Plea Offer, supra, at 18.) Additionally, the State notified counsel that if Petitioner pled guilty once trial was scheduled or was found guilty, the State would seek the maximum possible punishment of 104-134 months incarceration. (Plea Offer, supra.)

Petitioner asserts that attorney Frazier did not communicate the plea offer to him before Frazier withdrew as appointed counsel on June 2, 2011. Petitioner retained attorney Charles Oldham to replace Frazier. He contends that Frazier either provided a copy of the plea offer or communicated the terms of the offer to Oldham prior to Petitioner's first arraignment. Petitioner asserts that Oldham, however, did not communicate the offer to him prior to arraignment.

Petitioner's first arraignment was held on July 5, 2011. He was arraigned on all charges and was represented by Oldham. The State was represented by Assistant District Attorney ("ADA") Gordon Wikle. The following relevant exchange took place at the arraignment:

MR. WIKOE[3]:  Mr. Oldham, at 11CRS30472, 11CRS204129, how does your client plead to trafficking cocaine (inaudible)[4] with intent to sell and deliver cocaine and (inaudible) as a habitual felon?

MR. OLDHAM:  Your Honor, he's authorized a plea of not guilty.

MR. WIKOE:  In this matter (inaudible) a 17.11 (inaudible) trafficking.  The offer is hereby revoked (inaudible).

THE COURT:  All right.  Mr. Williams, do you understand what the D.A. just said?

CLEVELAND WILLIAMS:  Yes, sir.

THE COURT:  Do you have any questions about the plea offer?

CLEVELAND WILLIAMS:  No, sir.

(Arraignment Tr., Pet'r's' Ex. 7 21-22, Doc. No. 3.)

In an affidavit filed with his MAR, Petitioner averred that he told Oldham after the arraignment that had he known about the plea, he would have accepted it; that Oldham responded that he had not told Petitioner about the plea offer because he believed he would get a better plea offer from the State or possibly get the State to dismiss all of the charges against Petitioner; and that Oldham also stated he planned to file a motion to suppress the evidence seized from the BMW because the warrant to search it was defective.  (Pet'r's Mar. 18, 2013 Aff., Pet'r's Ex. 17 88-91 ¶¶ 9-14, Doc. No. 3-2.)  Petitioner further avers that Oldham subsequently asked ADA Wikle to allow Petitioner to plead guilty under the terms of the original plea offer, but the ADA refused; that the ADA offered a new plea deal that required Petitioner to spend 56 months in jail; and that Petitioner fired Oldham and retained attorney Dianne Jones McVay to represent him at trial.  (Pet'r's Mar. 18, 2013 Aff., <u>supra</u>, at ¶¶ 15-16.)  The record

---

[3] ADA Wikle's name is misspelled in the trial transcript.
[4] It is noted in the trial transcript that the ADA's microphone was not working properly.  (Arraignment Tr., Pet'r's' Ex. 7 21, Doc. No. 3.)

shows that McVay entered a notice of appearance on Petitioner's behalf on July 16, 2011. (R. on Appeal, Resp't's Ex. 1 5, Doc. No. 8-2.)

On August 3, 2011, McVay appeared on Petitioner's behalf at a Pretrial Readiness Conference. (R. on Appeal, <u>supra</u>, at 6.) According to Petitioner's affidavit, McVay repeatedly told him that the only open offer from the State required him to spend 56 months in jail. (Pet'r's Mar. 18, 2013 Aff., <u>supra</u>, at ¶ 17.) Also according to the affidavit, Petitioner rejected that plea because Oldham had failed to advise him of the first deal, and he proceeded to trial because McVay advised him that the State had no case and that she planned to ask the trial court to dismiss the charges for insufficient evidence. (Pet'r's Mar. 18, 2013 Aff., <u>supra</u>, at ¶¶ 17-18.)

Trial commenced on September 12, 2011. Prior to the State calling its first witness, the following colloquy was made on the record and out of the presence of the jury:

MS. McVAY: I would like to call my client briefly.

THE COURT: All right.
. . .

MS. McVAY: Your Honor, I want to put on the record about the plea offer, because he was not at the pretrial readiness conference.

THE COURT: All right.
. . .
MS. McVAY: Mr. Williams, you had a previous attorney, Mr. Charles Oldham; is that correct?

MR. WILLIAMS: Um-hmm.

MS. McVAY: And Mr. Oldham reviewed with you the plea offer at the time of the 17 to 21 months; is that correct?

. . .

MR. WILLIAMS: No, he hadn't gone over that with me.

MS. McVAY: At some point I went over that with you; correct?

MR. WILLIAMS:  Correct.

MS. McVAY:  And I explained to you that they were offering you a plea to attempted trafficking of cocaine; is that correct?

MR. WILLIAMS:  Correct.

MS. McVAY:  And at that point we had a pretrial readiness conference where you were not present; is that correct?

MR. WILLIAMS:  Yes.

MS. McVAY:  I subsequently called you and talked to your wife and explained to her the range of punishment in this case; right?  I explained the possibility of – if you were convicted you could receive up to 104 to 134 months; is that correct?

. . .

MR. WILLIAMS:  Yes.

MS. McVAY:  And I didn't talk to you directly, but I did talk to your wife and she – you had her communicate to me that you wanted to go to trial; is that correct?

MR. WILLIAMS:  Yes, ma'am.

MS. McVAY:  And that's what we're doing; is that correct?

MR. WILLIAMS:  Correct.

(Trial Tr. Vol. I, Pet'r's Ex. 8 45-47, Doc. No. 3.)

Based upon the record before it, the MAR court reasonably could have concluded that counsel did not render ineffective assistance in connection with the plea offer.  With regard to whether attorney Oldham communicated the terms of the State's plea offer before arraignment, the evidence is contradictory.  On the one hand, Petitioner's affidavit, the transcript from the first day of trial, and the alacrity with which Petitioner replaced Oldham as counsel are evidence that Oldham did not communicate the terms before arraignment.  On the other hand, the transcript of the arraignment is evidence that he did.  When asked directly by the trial court if he had any questions about the State's plea offer, an ordinary person in Petitioner's position would have

been expected to ask about the plea offer if he was hearing about it for the first time. The MAR court could have regarded Petitioner's responses at arraignment as conclusive evidence that Petitioner knew the terms of the plea offer and rejected it.

Alternatively, the MAR court could have concluded that Oldham did not communicate the terms of the plea offer before arraignment, but the plea offer was renewed prior to trial. The trial transcript shows that attorney McVay explained the terms of the State's plea offer to Petitioner prior to the pretrial readiness conference. McVay's stated reason for putting the plea information on the record was because Petitioner was not at the pretrial readiness conference. The MAR court could have concluded that McVay put this information on the record because there was an open plea offer from the State that was discussed at the pretrial readiness conference. Subsequent to the pretrial readiness conference, McVay called Petitioner to impress upon him that if convicted, he could receive up to 104 to 134 months in prison, but he wanted to go to trial. The MAR court could have concluded from this evidence that Petitioner rejected the State's plea offer. Because McVay referred to the plea offer as "offering . . . a plea to attempted trafficking of cocaine" and "17-21" months, the MAR court could have concluded that the plea offer Petitioner rejected was the same as originally offered.

Petitioner offers various assertions, arguments, and interpretations of the evidence presented to the MAR court, none of which demonstrates that the MAR court's rejection of Petitioner's claim was unreasonable. For example, Petitioner relies upon two statements in the written plea offer – that he had up to and including his first arraignment to accept the plea or it would be withdrawn, and that if he pled guilty once trial was scheduled or was found guilty, the State would seek the maximum possible punishment of 104-134 months incarceration (Plea Offer, Pet'r's Ex. 5 18, Doc. No. 3) – as evidence that the offer was permanently revoked when

he entered a guilty plea at arraignment.  Concurrently, Petitioner asserts that the State offered a second, less-favorable plea deal which included more jail time than the first offer but significantly less time than 104-134 months.  This alleged offer thus contradicts the State's previous statement that it would seek the maximum possible punishment if Petitioner pled guilty once trial was scheduled and demonstrates that it was willing to continue to negotiate a plea deal.  As such, it calls into question Petitioner's contention that the "original" plea deal was permanently revoked.

Additionally, Petitioner postulates that McVay put the "original" plea offer on the record on the first day of trial because she recognized that Oldham had violated Petitioner's Sixth Amendment rights by not communicating the terms of the offer to him before it lapsed.  When viewed in the context of Petitioner's other assertions, this argument defies logic.  If, as Petitioner alleges, the State made a second plea offer, it would have made no sense for McVay to put the "original" offer on the record and establish Oldham's failure to communicate its terms, but not put the terms of the second plea offer on the record to establish that Petitioner had been informed of that offer and had rejected it.  McVay, however, did not refer to any offer other than the "original," which she referred to as "*the* plea offer."  (Trial Tr. Vol. I, Pet'r's Ex. 8 46, Doc. No. 3) (emphasis added).  It is noteworthy as well that the prosecutor did not add anything to the record about a second plea offer to forestall a constitutional challenge on appeal or in post-conviction.

Finally, assuming arguendo that the "original" plea offer was permanently revoked when Petitioner entered a guilty plea at arraignment, that Petitioner knew nothing about the offer before arraignment, and that the State subsequently offered a less-favorable plea deal prior to

trial, the MAR court could have concluded that it was not reasonably probable that Petitioner would have accepted the original plea offer prior to it lapsing. See Lafler, 132 S.Ct. 1385.

The reason for accepting a plea deal is straightforward: a defendant who accepts a plea offer is more likely to receive a shorter sentence and/or a reduction in the number of charges against him than one who goes to trial and loses. See Frye, 132 S.Ct. at 1407 (citing Barkow, Separation of Powers and the Criminal Law, 58 Stan. L.Rev. 989, 1034 (2006) ("[Defendants] who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate, because the longer sentences exist on the books largely for bargaining purposes. This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial." (footnote omitted))). Under the law of diminishing returns, it can be presumed that there is a point at which a defendant will decide that the sentence exposure he faces at trial is worth the risk when compared to the offer made by the prosecution. There is no reason to believe that was the situation in Petitioner's case, however; fifty-six months imprisonment is substantially shorter than 104 months imprisonment. It would have been reasonable for the MAR court to conclude that if Petitioner would have accepted the State's original plea offer in order to secure a reduction in charges and/or a greatly reduced sentence, he would have accepted the State's second offer for the same reason and then raised a constitutional challenge in post-conviction, as he did here.

As noted, Petitioner asserted in the state court that he refused the second plea offer because Oldham had failed to inform him of the original offer before it lapsed. (Pet'r's Mar. 18, 2013 Aff., Pet'r's Ex. 17 88-91 ¶ 17, Doc. No. 3-2.) In the same affidavit, Petitioner asserted that he then proceeded to trial on the advice of counsel that the State had no case and that she

would be asking the judge to dismiss the charges for lack of evidence. (Pet'r's Mar. 18, 2013 Aff., <u>supra</u>, at ¶ 18.) Petitioner is attempting to have his cake, and eat it, too. After rejecting the State's second plea offer, Petitioner's only choices were to plead guilty or to go to trial. It would not have been unreasonable for the MAR court to determine that a defendant who had rejected a plea offer requiring fifty-six months imprisonment would not have then entered a straight-up guilty plea knowing that he could be sentenced to at least 104 months imprisonment, the same minimum sentence he faced if he went to trial and lost.

This Court must deny relief if there is any reasonable basis on which the MAR court's rejection of this claim can be found consistent with governing precedent. <u>See</u> <u>Richter</u>, 562 U.S. at 102. As demonstrated, although the evidence before the state court conflicted in some respects, there was a sufficient basis for the state court to reasonably conclude that trial counsel did not render ineffective assistance with respect to the plea process. Therefore, Respondent is entitled to summary judgment on this claim.

### D. Ineffective Assistance of Trial Counsel II

Petitioner claims that counsel McVay rendered ineffective assistance at trial. Specifically, Petitioner asserts that:

> Petitioner had informed his trial counsel, Attorney Jones-McVay, prior to trial that his former trial counsel, Attorney Oldham, had *not* advised him of the original plea bargain first offered to him by the State during the plea negotiation proceedings. Instead of ensuring that her client's constitutional rights under the Sixth and Fourteenth Amendments were adequately protected during the plea negotiation proceedings and/or at first arraignment hearing, his trial counsel not only advised Petitioner to reject or not consider the plea offer on the grounds that the State had no case against him, but also refused to conduct a reasonable investigation and failed to raise his Sixth and Fourteenth Amendment claims that the ineffective assistance of counsel during the plea negotiation proceedings and/or at the first arraignment hearing had caused the revocation, expiration, lapse or withdrawal of the original plea bargain offer leading up to his trial.

(Mem. in Support of Habeas Petition 48, Doc. No. 1-1.)

When not conclusory, these assertions by Petitioner contradict those made elsewhere in his Petition.  Of significant note, in this ground for relief Petitioner asserts that McVay advised him to reject "the plea offer" on the grounds that the State had no case against him.  The only plea identified in this claim is the one Oldham allegedly allowed to lapse.  Petitioner previously has asserted that he went to trial on McVay's advice but rejected the state's purported second plea offer because Oldham had not advised him of the first plea before it lapsed.  The conclusory, contradictory nature of this claim could have led a reasonable state court to reject it. See Richter, 562 U.S. at 102.

To the extent that Petitioner asserts McVay was ineffective for failing to inform the trial court on the first day of trial that Petitioner's Sixth Amendment rights were violated when Oldham allowed the State's plea offer to lapse, this Court has explained previously that it would not have been unreasonable for the MAR court to conclude that the offer was renewed before trial and/or that Petitioner failed to demonstrate a reasonable probability that he would have accepted the plea.  See Section III C, supra, at 14-17.  Respondent is entitled to summary judgment on this claim.

### E.  Ineffective Assistance of Appellate Counsel

Petitioner claims he was denied effective assistance when his appellate counsel failed to raise his Sixth and Fourteenth Amendment claims on direct appeal.  Petitioner raised this claim in his MAR, and it was rejected on the merits.

Criminal defendants are entitled to effective assistance of counsel on appeals as of right. Evitts v. Lucey, 469 U.S. 387 (1985); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). Appellate counsel is accorded a "'presumption that he decided which issues were most likely to afford relief on appeal.'"  Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560,

1568 (4th Cir. 1993)). "Counsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" Bell, 236 F.3d at 164 (quoting Jones v. Barnes, 463 U.S. 745, 752 (1983)). "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy," and "counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims." Bell, 236 F.3d at 164 (alteration, citations, and internal quotation marks omitted). In sum, while "it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim on direct appeal, . . . it will be difficult to demonstrate that counsel was incompetent." Id. (internal quotation marks and alteration omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (internal quotation marks omitted).

On direct appeal, the court generally is limited to reviewing claims of that are readily apparent from the trial record alone. It would not be unreasonable for the MAR court to conclude that the trial record in this case does not reveal a viable Sixth Amendment claim related to the plea process. As previously discussed, the arraignment transcript does not provide any indication that Petitioner was unaware of the State's plea offer. Additionally, while Petitioner stated at trial that Oldham had not gone over the plea with him, he acknowledged that McVay had gone over the terms of the agreement with him. There is nothing in that colloquy that indicates the offer was not still open at the time McVay explained it to Petitioner or that Petitioner would have accepted it. Consequently, it would not have been unreasonable for the

MAR court to determine that appellate counsel performed within the wide range of professional competence.  See Strickland, 466 U.S. at 689.

Petitioner has not demonstrated that the MAR court's rejection of the claim was contrary to or represented an unreasonable application of clearly established Federal law.  See § 2254(d)(1).  Therefore, Respondent is entitled to summary judgment as a matter of law.

## IV.    ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED AND DISMISSED**;

2) Respondent's Motion for Summary Judgment (Doc. No. 7) is **GRANTED**;

3) Petitioner's Motion to Alter or Amend Judgment pursuant to Rule 59(e) (Doc. No. 10) is **DENIED**;

4) Petitioner's Motion for Discovery (Doc. No. 11) is **DENIED**;

5) Petitioner's motions for extension of time to respond to Respondent's pleadings (Doc. Nos. 12, 13) are **DENIED** as moot;

6) Petitioner's Motion for Summary Judgment (Doc. No. 17) is **DENIED**, and

7) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must

establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: August 21, 2015

Frank D. Whitney
Chief United States District Judge